# Richmond

## WARD SWANK, CO-EXECUTOR OF ESTATE OF JAMES E. REHERD v. ANNA J. REHERD, ET AL.

October 13, 1943.

Record No. 2700.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Ward Swank*, for the appellant.

*R. M. Weaver* and *Laird L. Conrad*, for the appellees.

BROWNING, J., delivered the opinion of the court.

James E. Reherd, who resided in the city of Harrisonburg, Virginia, died testate leaving an estate of the appraised value of $187,416.43, of which $150,616.43 was personal estate and $36,800.00 was real estate. He was 95 years old and left surviving him his widow, Anna J. Reherd, who was his

second wife. He made provision for her but she exercised her right to take, in lieu thereof, the portion for widows, in the Virginia Statute, made and provided, in the circumstance here. There were no children of either marriage. The will contained eleven clauses which carried a number of bequests to individuals and to institutions. The testator named the National Bank of Harrisonburg and Ward Swank, of Harrisonburg, as his executors, who qualified and entered into a bond in the penalty of $175,000.00, conditioned according to law.

The personal property belonging to the estate and which went into the hands of the executors for administration was as follows:

| | |
|---|---:|
| Bank deposits...................\$ | 54,536.46 |
| Principal 69 notes and bonds, ranking in amounts from $100.00 to $8,000.00 collected to this date.............. | 64,266.64 |
| Interest collection notes and bonds.... | 8,593.24 |
| 126 shares of capital stock of four local corporations appraised at $13,245.00 but sold by executors at public auction for......................... | 15,885.00 |
| Dividends collected ................. | 960.50 |
| Rents collected ..................... | 832.91 |
| Tangible personal property sold by executors at public auction......... | 490.80 |
| Miscellaneous receipts .............. | 844.74 |
| Estimated value of personal property unsold or uncollected.............. | 10,000.00 |
| Approximate Total Per. Estate........\$ | 156,410.29 |
| Appraised value real estate directed to be sold but taken in kind........... | 21,800.00 |
| Total value estate exclusive of residence property ........................\$ | 178,210.29 |

Debts aggregating $10,148.62, and ranging in amounts from $3.50 to $7,210.00, were filed against the estate, and were uncontested, and, after allowance, were paid.

Seven claims aggregating $38,022.43, ranging in amounts from $850.00 to $15,350.00, founded upon various alleged charges, were filed against the estate, the payment of which was contested and resisted by the executors. The amount finally recovered was $12,929.57, so that the liabilities sought to be established against the estate were reduced by the action of the executors in the sum of $25,092.86.

In January, 1941, the executors filed a chancery suit in the circuit court of Rockingham county to have an ascertainment of the share of the widow in the estate and to have her dower assigned and the estate administered under the supervision and direction of the court. There was an order of reference and there were taken before the master commissioner depositions in support of the claims covering 383 pages of typewritten matter. These claims were vigorously prosecuted and vigorously contested.

Ward Swank, co-executor, an attorney at law, was the attorney for the executors and was present at the taking of the testimony, representing the executors of the estate. Other attorneys represented the claims referred to, all of whom filed written notes of argument to sustain their several positions before the commissioner, who filed original and recommittal reports, to which exceptions were taken and filed by the said Ward Swank, counsel. These exceptions were overruled by the trial court by its decree of April 25, 1942, and said counsel obtained an appeal to this court. Cross error was assigned by counsel for one of the aggrieved complainants.

The issues presented may be readily comprehended from the following quotation from the petition:

"(1) For the legal and professional services which he has rendered for the James E. Reherd estate is petitioner entitled to receive compensation based upon the scale of fees usually paid to attorneys for similar services rendered in cases in which they are not coexecutors?

"(2) In a case such as the present where executors are directed to convert real estate into cash, but which real estate is taken in kind by the beneficiary, are the executors entitled to receive as compensation for their services 5% on the appraised value of the real estate so taken?"

The compensation of fiduciaries is fixed in Virginia by statute, which is Code section 5425. In many other states such compensation is not of statutory provision. The following was said in *Jones* v. *Virginia Trust Co.*, 142 Va. 229, 128 S. E. 533:

"The right of a fiduciary to receive compensation for administering an estate is of purely statutory origin. The law fixes no certain compensation. The statute under which a fiduciary is allowed expenses is section 5425, Code 1919, which reads as follows:

" 'The commissioner in stating and settling the account shall allow the fiduciary any reasonable expenses incurred by him as such, and also, except in cases where it is otherwise provided, a reasonable compensation in the form of commissions (on receipts) or otherwise.' "

The same subject was treated in the case of *Trotman* v. *Trotman*, 148 Va. 860, 139 S. E. 490, in which this was said:

"The only statute governing commissions to a personal representative is found in section 5425 of the Code, where it is said that they shall be 'reasonable', which is but another way of saying that they are to be measured by the conscience of the court.

"The value of the estate, the character of the work, the difficulties encountered, and the results obtained must all be remembered in reaching a judgment."

In the immediate case the learned chancellor held that the executors of Mr. Reherd were entitled to receive a commission of 5 per centum on his personal estate and further held that they were only entitled to receive a commission of 2 per centum on the appraised value of the real estate which was to be converted into cash in accordance with the provisions of the will, and further held that Ward Swank,

one of the executors who is an attorney at law, was entitled to receive, in this capacity, only $750.00.

The allowance of only 2 per centum in the case of the real estate seemed to have been predicated upon the fact that the beneficiaries elected to take the real estate, itself, rather than the proceeds of a sale or conversion of it. In the clause of the decree fixing the compensation to be paid to Ward Swank, attorney, the court declared that he did represent the estate in the litigation which arose on account thereof and that he did render services, as an attorney, which contributed to a substantial reduction in the liabilities of the estate, and that said service was outside of that ordinarily performed by an executor and that he was entitled to be paid therefor but not on the basis of fees usually paid attorneys for similar services, *ergo* the allowance of $750.00.

We are of opinion that the decree is erroneous in both particulars. The executors were entitled to a commission of 5 per centum on the appraised value of the real estate, whether converted or not, the beneficiaries choosing to take it in kind rather than in cash.

This principle is settled in this state by the decision in the case of *Jones* v. *Virginia Trust Co.*, *supra*, in which this was said:

"Inasmuch as the statute fails to lay down a hard and fast rule, we are of opinion that the court should not do so. To us a fair construction of the statute seems to be that if the fiduciary sells property of whatever kind he is generally entitled to a commission of five per cent on the receipts. If he has the right to sell, but those entitled to the proceeds of sale prefer to take the property in kind, then he is generally entitled to receive five per cent commission on the appraised value of the property. If he is not entitled to sell the property, but must deliver it in kind (except in case of a specific legacy) he is only entitled to a reasonable compensation, to be fixed by the Commissioner or Court, upon the proper proof of the expense incurred, the risk taken, and

the services rendered in connection with the property so delivered to those entitled thereto."

And in the case of *Grandy* v. *Grandy*, 177 Va. 601, 15 S. E. (2d) 66, we said: " * * * If he sells real property he is also entitled to 5% on the proceeds of sale. If he has the right to sell, he is entitled to a like commission on its fair value, even though the beneficiary elects to take in kind; otherwise to a reasonable compensation. *Trotman* v. *Trotman, supra,* and *Mapp* v. *Hickman,* 164 Va. 386, 180 S. E. 296."

The case of *Turnbull* v. *Buford,* 119 Va. 304, 89 S. E. 233, presented facts very similar to those with which we are here concerned and the questions at issue were much the same. There the executors of one Talley instituted a chancery suit to obtain the court's guidance and direction as to the investment of certain funds in their hands in which a life estate existed. During a certain period of time this fund was held by Robert M. Turnbull a commissioner of the court, who was also a lawyer. He was succeeded as custodian of the fund, as commissioner, by Edward R. Turnbull, who was also a lawyer. Subsequently, E. P. Buford qualified as administrator of Talley and he instituted suit charging that the commissioners were liable to the estate for interest on the funds which they had failed to invest.

This court said, Judge Harrison delivering the opinion:

"The contention of the appellants that the court erred in refusing to allow them reasonable fees for their services as attorneys in this cause is, we think, well taken. The record shows that under an understanding between the appellant, Robert Turnbull, and one of the administrators of this estate, he was paid as attorney $20.00 per annum during the long period that he was connected with the case. Appellant says that this small annual stipend was his agreed compensation for once a year looking over the administrator's papers with him and putting them in shape for his annual settlement before a commissioner. On the other hand the administrator insists that it was intended to cover his entire compensation for the services rendered in the cause on all accounts and for

all parties thereto. The court increased this allowance, in the case of the appellant E. R. Turnbull, to $50.00 per annum.

"The appellants were, succeeding each other, the sole counsel connected with this case for more than twenty years, rendering in that time all of the varied professional services that would necessarily be imposed upon any lawyer in conducting a suit of this character, involving a large estate. No one can examine this voluminous record, with its countless reports, statements, settlements and decrees, without being impressed with the great volume of professional services necessarily rendered therein by counsel, nor without being satisfied that great injustice has been done appellants by the allowance of fees that has been made to them. We are of opinion that, based upon the proof already in the record and upon any additional evidence that may be adduced on the subject by the parties, a reasonable fee should be ascertained and allowed to each of the appellants for their services as attorneys in this case."

In the case of *Joel Bailey Davis Co.* v. *Augustus*, 105 Va. 843, 54 S. E. 985, this was said: "For such services the trustees could have employed other lawyers, and no reason is perceived why as lawyers, they should not render the service themselves and be paid a fair and reasonable compensation."

In *Trotman* v. *Trotman, supra*, this court, Mr. Justice Holt delivering the opinion, held, in speaking of the terms of Code Section 5425, to which we have referred, that the word "reasonable", as applied to commissions of personal representatives, simply means that the compensation is to be "measured by the conscience of the court." And it was said that the value of the estate, the character of the work, the difficulties encountered, and the results obtained must all be considered in determining the matter.

Here the estate was a large one. The character of the work was varied and it demanded the legal services of a careful and efficient lawyer. The difficulties encountered were real and multiple. In the first place it was necessary

to have the aid and advice of the chancery court in administering so large an estate. Large claims and demands were lodged against it. They were resisted successfully to the end that the large sum of $25,000.00 was saved. The fact that a bond of $175,000.00 was required of the executors by the court emphasizes the importance of the trust as well as the responsibilities connected with its execution.

We do not think that there is any impropriety in a personal representative acting as an attorney for the estate which he is administering, if he is an attorney and such service is necessary. There is nothing inherently wrong about it and he is entitled to reasonable compensation.

A careful examination of the record reveals that there is sufficient data and information for this court to fix a reasonable fee for Ward Swank, attorney. We think that he is entitled to a fee of $2,500.00, to be credited by $750.00 which was allowed him by the trial court, which is reasonable; and we think that the executors are entitled to a commission of 5 per centum on the appraised value of the real estate, and we think that the decree should be reformed to the extent indicated in each of these particulars.

Accordingly the decree is

*Affirmed in part and reversed in part and remanded.*