LOGAN COUNTY ANIMAL CONTROL WARDEN, Plaintiff-Appellee, v. MARK DANLEY *et al.*, Defendants-Appellants.

Fourth District   No. 4—90—0644

Opinion filed March 29, 1991.

Steven W. Perbix, of the Lawyers Group, P.C., of Lincoln, for appellants.

John Turner, State's Attorney, of Lincoln (Kenneth R. Boyle, Robert J. Biderman and Donna Dagnall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by defendants Mark and Sara Danley from an order of the circuit court of Logan County finding defendants' dogs to be vicious, pursuant to section 15(a)(1)(i) of the Animal Control Act (Act) (Ill. Rev. Stat. 1989, ch. 8, par. 365(a)(1)(i)), ordering defendants to pay to plaintiff, Logan County animal control warden, $2,965 for the use and benefit of Craig D. Conrady, $105 for boarding costs for their dogs, and requiring defendants to keep the dogs confined to an enclosure or run line. On appeal, defendants raise two issues.

■■ The first issue is whether the Logan County State's Attorney had authority to bring an action which resulted in money damages awarded for the use and benefit of a private, third party. The plaintiff in this case is the Logan County animal control warden. The State's Attorney has a duty to commence and prosecute all actions and proceedings brought on behalf of a county officer in the officer's official capacity. (Ill. Rev. Stat. 1989, ch. 34, par. 3—9005(3).) The animal control warden is such an officer. Ill. Rev. Stat. 1989, ch. 8, pars. 352.01, 352.03, 353.

Defendants do not challenge the State's Attorney's authority to institute an action to restrain the dogs. Instead, defendants complain there is no provision which would, in effect, allow the State's Attorney to prosecute a civil action on behalf of the owner of injured livestock, as in this case Conrady.

■■ Section 18.1 of the Act expressly makes dog owners liable for such damages. (Ill. Rev. Stat. 1989, ch. 8, par. 368.1.) However, there is also provision for the property owner to be reimbursed by the animal control fund upon proper application thereto and proof of damages by appearing before a member of the county board and making an affidavit as to the number and type of animals injured or killed. In order to recover, the owner of the livestock must be a resident of this State and the injury or killing must have been reported within 24 hours. (Ill.

Rev. Stat. 1989, ch. 8, par. 369.) The monies in the animal control fund come from fees for the registration of dogs. (Ill. Rev. Stat. 1989, ch. 8, pars. 353, 357.) One-third of all fees collected is retained in the fund until the first Monday in March of each calendar year for the purpose of paying claims for the loss of livestock. (Ill. Rev. Stat. 1989, ch. 8, par. 357.) Once the owner of livestock which has been injured or killed has made an appropriate claim and the member of the county board has filed a written report with the county treasurer, payment is authorized as follows:

"The County Treasurer shall, on the first Monday in March of each calendar year, pay to the owner of the animals or poultry the amount of damages to which he is entitled. Unless the county board, by ordinance, establishes a schedule for damages reflecting the reasonable market value; the damages allowed for grade animals or poultry shall not exceed the following amounts:

a. For goats killed or injured, $30 per head.

b. For cattle killed or injured, $300 per head.

c. For horses or mules killed or injured, $200 per head.

d. For swine killed or injured, $50 per head.

e. For turkeys killed or injured, $5 per head.

f. For sheep killed or injured, $30 per head.

g. For all poultry, other than turkeys, $1 per head.

The maximum amounts hereinabove set forth may be increased 50% for animals for which the owner can present a certificate of registry of the appropriate breed association or organization. However, if there is not sufficient money in the portion of the fund set aside as stated in Section 7 to pay all claims for damages in full, then the County Treasurer shall pay to such owner of animals or poultry his pro rata share of the money available." (Ill. Rev. Stat. 1989, ch. 8, par. 369.)

Such a payment does not bar the owner of the livestock from bringing an action against the dog owner for damages. However, to the extent there is a recovery, reimbursement is to be made to the county treasurer. Ill. Rev. Stat. 1989, ch. 8, par. 370.

While section 18.1 of the Act provides that the dog's owner is liable for all damages, it does not in any way authorize the veterinarian appointed as administrator under the Act, any deputy administrator, or the animal control warden to prosecute an action to establish liability or the amount of damages payable to the owner of the injured or killed livestock.

■ The proper procedure is fully set forth in the statutes. This is not a criminal proceeding as a result of which defendants have been ordered to pay restitution, although such a procedure might be employable. For example, the Act provides it is unlawful to keep or maintain a dog which has been found to be a vicious dog, unless the dog is kept on a run line or in an enclosure at all times. (Ill. Rev. Stat. 1989, ch. 8, par. 365(b).) It is also unlawful to maintain a public nuisance by allowing any dangerous dog to leave the owner's premises when the dog is not on a leash or controlled by some other recognized means. (Ill. Rev. Stat. 1989, ch. 8, par. 365(c).) The statute defines the terms "vicious dog" and "dangerous dog." (Ill. Rev. Stat. 1989, ch. 8, pars. 365(a)(1), (a)(2).) The violations of these provisions are Class C misdemeanors (Ill. Rev. Stat. 1989, ch. 8, par. 376), and in the event of a conviction for one of these offenses, restitution may be ordered as part of the sentence. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6.

■■ The case at bar, however, was initiated by a civil complaint. The complaint, which was filed by the State's Attorney on behalf of the Logan County animal control warden, as plaintiff, merely requests the trial court to determine the appropriate penalties and relief for all parties involved. The complaint alleges defendants' dogs attacked and killed or injured swine owned by Craig D. Conrady. Conrady was not named a party to the civil litigation. Although the party designation on a complaint need not necessarily demonstrate that the action is brought for the use and benefit of another person, the plaintiff must be vested with a legal right of action. (2 C. Nichols, Illinois Civil Practice §903 (1990).) An example of such an appropriate procedure would be when the action was brought pursuant to a recognized right of subrogation. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—403.) However, in this case the State has failed to establish any statutorily recognized right in the animal control warden to bring an action against defendants for damages payable to Conrady.

■ The State has cited no authority which indicates the State's Attorney can act as counsel for Conrady. Furthermore, even if it is assumed that section 18.1 would allow county officials to seek from defendants reimbursement for monies expended to owners of injured or killed livestock, there is no allegation or proof of that amount so expended to Conrady or that Conrady had made an appropriate claim to the county. Moreover, it is obvious that since the alleged incident occurred on May 17, 1990, the county treasurer would make no payment under the statute to Conrady until the first Monday in March 1991. The trial court's order having been entered on August 14, 1990, clearly the county was not yet entitled to reimbursement.

■■ ■ As a result of this analysis, it is obvious the entry of a money judgment in favor of plaintiff for the use and benefit of Conrady is not appropriate here. The State's Attorney cannot utilize his official capacity to represent a private individual in a private matter. (*People ex rel. Carey v. Lincoln Towing Service, Inc.* (1976), 40 Ill. App. 3d 126, 351 N.E.2d 342.) Nor is this the type of incidental benefit which would remove the State's Attorney's disqualification. (See *People ex rel. Mahoney v. Decatur, Springfield & St. Louis Ry. Co.* (1905), 120 Ill. App. 229.) The appropriate incidental benefit is the protection of Conrady's hogs by having the defendants' dogs restrained. The State argues that this court should allow the judgment to stand in the interest of judicial economy. There seems to be no logical reason the instant action could not have been consolidated with a cause of action for damages initiated by Conrady. However, Conrady brought no such action. Accordingly, that portion of the order which awards plaintiff a judgment in the amount of $2,965 for the use and benefit of Conrady is reversed since the Act authorizes no such relief.

Defendants do not otherwise challenge the method employed by plaintiff to initiate the action. Defendants do, however, argue that the trial court's finding the defendants' dogs to be vicious was against the manifest weight of the evidence. The statutory definition of "vicious dog" is as follows:

"(i) Any individual dog that when unprovoked inflicts bites or attacks a human being or other animal either on public or private property;

(ii) Any individual dog with a known propensity, tendency or disposition to attack without provocation, to cause injury or to otherwise endanger the safety of human beings or domestic animals;

(iii) Any individual dog which attacks a human being or domestic animal without provocation;

(iv) Any individual dog which has been found to be a 'dangerous dog' upon 3 separate occasions;

(v) No dog shall be deemed 'vicious' if it bites, attacks, or menaces a trespasser on the property of its owner or harms or menaces anyone who has tormented or abused it or is a professionally trained dog for law enforcement or guard duties ***."

(Ill. Rev. Stat. 1989, ch. 8, pars. 365(a)(1).)

It is defendants' contention that the evidence fails to establish that the attack by their dogs was unprovoked.

■■■ The judgment of the trial court will be considered to be against the manifest weight of the evidence if, after a review of the

record, it is clearly evident the conclusion opposite to that reached by the trial court was the proper disposition. (*Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 536 N.E.2d 1329.) This standard of review recognizes that the trial court is in a much better position than is this court to observe the witnesses, assess credibility, and weigh the evidence. For this reason, a reviewing court will not overturn the trial court's findings merely because the reviewing court might have reached a different result. *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506.

■■ The evidence may be summarized as follows. Defendants' dogs were allowed to run loose. These dogs were observed in and around Conrady's hog pen at the time the dead and injured hogs were discovered. The hogs had been purchased only two days before and were confined to the pen. There is a distance of about three miles from defendants' residence to the hog pen.

While there was no eyewitness testimony to the actual killing and injuring of the pigs, the lack of provocation can be inferred from the facts established at trial. Under the facts of this case, the trial court could reasonably find the hogs did nothing, other than their mere presence, to provoke the attack by defendants' dogs. Just as the scream of a small child will not be considered sufficient provocation to avoid liability in a civil action (*Robinson v. Meadows* (1990), 203 Ill. App. 3d 706, 561 N.E.2d 111), the mere presence of livestock in their own pen cannot be considered sufficient provocation to avoid a finding that the dogs are vicious.

Defendants' reliance on this court's decision in *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 523 N.E.2d 704, is misplaced. *Forsyth* involves a case in which a person was injured by a horse. Since eyewitnesses were present, there is much more direct testimony relating to provocation than is present in the instant case. Moreover, the trial court in this case correctly pointed out that there is a qualitative difference between provocation by a human being and provocation by another animal. Since the hogs were confined, it is clear they did not attack the dogs. As a result, the trial court's finding the dogs to be vicious is not against the manifest weight of the evidence.

For the foregoing reasons, the order of the circuit court of Logan County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

LUND, P.J., and KNECHT, J., concur.